SIMPSON et al. v. CITY OF NACOGDOCHES et al.

(Court of Civil Appeals of Texas. Galveston. Dec. 18, 1912. Rehearing Denied Jan. 16, 1913.)

1. MUNICIPAL CORPORATIONS (§ 993*)—SUBJECTS OF RELIEF—EXECUTED TRANSACTIONS.

Temporary injunction against sale and delivery of municipal bonds does not lie if they were delivered before the application for the injunction was heard.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2158–2161; Dec. Dig. § 993.*]

2. MUNICIPAL CORPORATIONS (§ 993*)—BONDS — CERTIFICATE OF VALIDITY — CONCLUSIVENESS.

Under Rev. Civ. St. 1911, art. 625, which makes forgery or unconstitutionality the only defenses available against suit to enforce registered and certified municipal bonds, suit can be brought by taxpayers to declare such bonds invalid on those grounds only.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2158–2161; Dec. Dig. § 993.*]

3. MUNICIPAL CORPORATIONS (§ 911*)—ELECTRIC LIGHT BONDS—AUTHORITY TO ISSUE—"OTHER PERMANENT IMPROVEMENTS."

Const. art. 8, § 9, authorizing municipal taxation "for the erection of public buildings, streets, sewers, waterworks, and other permanent improvements," authorizes issuance of bonds to purchase or construct electric light plants.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1899, 1901; Dec. Dig. § 911.*

For other definitions, see Words and Phrases, vol. 6, pp. 5070–5102; vol. 8, pp. 7741–7743.]

4. MUNICIPAL CORPORATIONS (§ 918*)—BONDS —ELECTION—SUBMISSION OF QUESTION.

It was not improper to submit to municipal electors a question whether bonds should be issued for the purpose of "purchasing and constructing" an electric light plant.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1919–1923; Dec. Dig. § 918.*]

5. MUNICIPAL CORPORATIONS (§ 925*)—BONDS —MATURITY—CHANGE.

Under Rev. Civ. St. 1911, art. 606, which requires the time in which municipal bonds are to be payable to be specified in submitting a question as to whether bonds shall be issued, issuance of bonds payable in 40 years and redeemable after 10 years is not authorized by a vote on issuing bonds payable in 40 years and redeemable after 5 years.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1938; Dec. Dig. § 925.*]

6. MUNICIPAL CORPORATIONS (§ 931*)—BONDS — CERTIFICATE OF VALIDITY — CONCLUSIVENESS.

Under Rev. Civ. St. 1911, art. 625, which makes forgery or unconstitutionality the only defenses available against suit to enforce registered and certified municipal bonds, suit does not lie to declare void bonds already delivered, though they were made payable in 40 years and redeemable in 10 years, while the authority given by the electors was to issue bonds payable in 40 years and redeemable in 5 years.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1944–1947; Dec. Dig. § 931.*]

7. MUNICIPAL CORPORATIONS (§ 921*)—BONDS —USE OF PROCEEDS.

Municipal authorities cannot legally use proceeds of bonds issued for an improvement to pay debts contracted before the election at which the bonds were voted.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1932–1935; Dec. Dig. § 921.*]

Appeal from District Court, Nacogdoches County; James I. Perkins, Judge.

Action by A. D. Simpson and another against the City of Nacogdoches and others. From an order refusing a temporary injunction, plaintiffs appeal. Partly affirmed, and partly reversed and rendered.

See, also, 152 S. W. 863.

This suit was brought by the appellants, A. D. Simpson and O. E. Hubbard, citizens and taxpayers of the city of Nacogdoches, who sue for themselves and other citizens and taxpayers of said city, and the Nacogdoches Light & Power Company, a corporation having its domicile in said city, against said city and its mayor and board of aldermen, who are each and all named in the petition, to enjoin the defendants from selling or disposing of certain bonds of said city described in the petition, and from constructing a light plant in said city and using the funds or any part thereof derived from the sale of any of said bonds, if any part thereof has been sold for the construction of a light plant in said city, and from the payment of any debts contracted for bridges or other purposes before the issuance of said bonds or before the call for the election at which said bonds were voted.

The petition alleges, in substance, that on February 12, 1912, the city council of the city of Nacogdoches passed the following resolutions and order of election: "Whereas, the city council of the city of Nacogdoches, Texas, deem it advisable to issue the bonds of said city for the purpose hereinafter mentioned, therefore it is hereby ordered by said city council of the city of Nacogdoches that an election be held on the 19th day of March, 1912, at which election the following propositions shall be submitted: First. Shall

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the city council of the city of Nacogdoches, Texas, be authorized to issue the bonds of said city in the sum of $20,000, payable 40 years after date, with the option of redeeming same at any time after 5 years from date, bearing interest at the rate of 5 per cent. per annum, interest payable annually, and to levy a tax sufficient to pay the interest on said bonds and create a sinking fund to redeem them at maturity, for the purpose of purchasing and constructing an electric light plant for said city. Second. Shall the city council of the city of Nacogdoches be authorized to issue the bonds of said city in the sum of $15,000, payable 40 years from date with the option of redeeming same at any time after 5 years from date, bearing interest at the rate of 5 per cent. per annum, interest payable annually, and to levy a tax sufficient to pay the interest on said bonds and create a sinking fund sufficient to redeem them at maturity, for the purpose of the construction of sewers in said city. Third. Shall the city council of the city of Nacogdoches be authorized to issue the bonds of said city in the sum of $30,000, payable 40 years after date with the option of redeeming same at any time after 5 years from date, bearing interest at the rate of 5 per cent. per annum, interest payable annually, and to levy a tax sufficient to pay the interest on said bonds, and create a sinking fund sufficient to redeem them at maturity for the purpose of street improvement in said city. Said election shall be held at the city hall in said city of Nacogdoches, and J. A. Spears is hereby appointed manager of said election. Said election shall be held under the provisions of chapter 149, Acts of the Twenty-Sixth Legislature, Laws of 1899, and only qualified voters who are property taxpayers of said city shall be allowed to vote, and all voters desiring to support the first proposition to issue bonds shall have printed on their ballots the words: 'For the issuance of bonds for electric light plant.' And those opposed shall have printed on their ballots the words: 'Against the issuance of bonds for electric light plant.' All voters desiring to support the second proposition to issue bonds shall have printed on their ballots the words: 'For the issuance of bonds for the construction of sewers.' And those opposed shall have printed on their ballots: 'Against the issuance of bonds for the construction of sewers.' And all voters desiring to support the third proposition to issue bonds shall have printed on their ballots the words: 'For the issuance of bonds for street improvements.' And those opposed shall have printed on their ballots the words: 'Against the issuance of bonds for street improvements.' The manner of holding said election shall be governed by the laws of the state regulating general elections." That in accordance with said order, and after due notice had been given, an elec-

tion was held in said city on March 19, 1912, and said election resulted in a majority in favor of the issuance of each of the series of bonds named, and the result of the election was declared by the city council at a meeting of said council held on March 20, 1912. That thereafter, on April 16, 1912, the city council passed an ordinance authorizing the issuance of the bonds described in the resolution and order of election before set out, but providing that the period of redemption of the bonds should be fixed at 10 years from their date instead of 5 years, as provided in the resolution submitted to the voters by said order of election. That thereafter, on July 2, 1912, the city council passed another ordinance authorizing the issuance of said series of bonds as provided for in the ordinance of April 16th, but changing the amount of bonds for the construction of sewers from $15,000 to $7,000, and in pursuance of said ordinance the bonds therein described had been prepared and executed by the city.

Then follow allegations to the effect that it was understood by many of the voters at said election, from representations made by the city council through authorized publication in the newspapers, and by verbal representations by the defendant mayor and some of the defendant aldermen, that, in event a majority of the voters at said election should vote in favor of the issuance of the proposed bonds for the purpose of purchasing and constructing an electric light plant for said city, the defendants would favor the purchase of the plant of the Nacogdoches Light & Power Company, which was and is a light plant operating in said city and serving the purposes and needs of the city, and that, because of said understanding on the part of the voters, many of them were induced to vote for said bonds; but that since said election the defendants had declined to purchase said plant at the price fixed by an expert electrician selected and appointed by the defendants, and have declared their purpose to construct a competing plant in said city. It is further alleged that the sum of $20,000, the amount of the bonds issued for that purpose, is insufficient for the construction of a light plant adequate for the needs of said city, and the construction of such a plant as could be constructed for the amount of said bonds would result in a waste of money, and the taxpayers would suffer loss because of the competition between such plant and the existing plant in said city. It is further alleged: "That the order for said election provided and declared that said bonds, if issued, should be payable 40 years after date with the option of redeeming them at any time after 5 years from their date. That said city council arbitrarily, willfully, and without the authority of the taxpaying voters of said city issued said bonds with the option to redeem same after 10 years from date. That

said city council arbitrarily, willfully, and without authority from taxpaying voters of said city, and contrary to their expressed will in said election, issued the bonds for sewers in the sum of $7,000; that said sum of $7,000 is inadequate and insufficient to build any kind of competent sewer system for said city, and its investment for such purpose would be a waste and loss to the majority of the taxpayers of said city and result in no benefit whatever to a large proportion of the people. That after the result of said election was declared, as has been hereinbefore stated, it was found that not more than the sum of $57,000 in bonds of said city could be legally issued; that said sum of $57,-000 was less than the sum voted to be issued by the taxpaying voters in said election in the sum of $7,000, and that said city council arbitrarily and without the consent of the citizens, who voted in said election, and contrary to their expressed will, forced the reduction of said issuance totally from the sum voted for sewers in said election. Plaintiffs aver that the total amount possible to be levied for taxes in said city has been levied, and that the total amount of bonds possible to be issued by said city have been issued. That on the 13th day of February, 1912, the city council of said city awarded a contract for the construction of two concrete bridges in said city of Nacogdoches at a cost of more than $4,000, and petitioners are informed and believe, and upon such information and belief aver, that the members of said city council have declared it their purpose to use and appropriate a portion of the funds realized from the sale of said bonds to discharge and pay off this indebtedness contracted and assumed prior to said election; that it is the purpose of said city council, as expressed by the members thereof, to pay off said indebtedness out of the funds to be realized for the sale of bonds issued for street improvements. Plaintiffs aver upon information and belief, and will undertake to show to the court, that the city of Nacogdoches is now without funds to pay its current expenses, and is indebted to the Commercial Guaranty State Bank of Nacogdoches in the sum of $4,660. Petitioners say that they have no legal remedy for their protection; that they will suffer irreparable injury, as they verily believe, should the purposes and intent of said city council, as hereinbefore stated, be put into execution, wherefore petitioners pray your honor to issue a writ of injunction restraining George H. Matthews, mayor of said city, and each and every alderman thereof, to wit, G. A. Blount, O. F. Swift, J. A. Drewery, J. R. McKinney, and F. B. Sublett, and the city council of said city, from selling or disposing of said bonds or any part thereof, and from constructing a light plant in said city of Nacogdoches and from using the funds, or any part thereof, derived from the sale of any part of said bonds, should they have been sold, for the construction of a light plant in said city of Nacogdoches, and for the payment of any debts contracted for bridges or other purposes before the issuance of said bonds or before the call for said election, and from expending the sum of $7,000, or any sum less than the sum of $15,000, for the construction of sewers in said city, and from using or applying any of the taxes of said city for the purpose of creating a sinking fund and paying off the interest on the aforesaid bonds. · Petitioners pray that defendants be cited to appear, and that your honor hear proof in the matters herein alleged, and that the injunction herein applied for be made perpetual, and for other and further relief, special and general, both in law and equity, that they may be entitled to."

This petition, properly verified, was presented to Hon. James I. Perkins, judge of the district court of Nacogdoches county, on July 31, 1912, in chambers, and he thereupon indorsed his fiat thereon, granting a temporary restraining order in accordance with the prayer of the petition, and setting the matter of granting the injunction for hearing on the first Monday in September, 1912. On August 17, 1912, the defendants filed an answer and a motion to dissolve the temporary restraining order theretofore issued. These pleadings of the defendants, in addition to general and special exceptions, aver that the bonds mentioned in plaintiffs' petition were duly approved by the Attorney General of this state and registered by the comptroller in accordance with the provisions of the statute, and, after such approval and registration, they were sold by the defendants and delivered to the purchaser, the Commercial Guaranty State Bank of the city of Nacogdoches, and the proceeds of such sale received by the city before the granting of said restraining order of July 31, 1912. Attached to said answer as exhibits are certificates of the Attorney General and comptroller showing the approval and registration of said bonds on July 24 and July 25, 1912, respectively.

In reply to defendants' answer and motion to dissolve, plaintiffs on August 19, 1912, filed an answer containing a general demurrer and special exceptions, the nature of which it is unnecessary to state, and also the following averments: "The writ of injunction granted in this cause was granted about 11 o'clock a. m. on July 21, 1912, the fiat of the judge being placed thereon about 1 o'clock p. m. of said day; that said sales of said bonds to the Commercial Guaranty State Bank at Nacogdoches was not in any manner made nor said bonds delivered to said bank until 4 o'clock p. m. of said date; that the officers of said bank and the mayor of the city of Nacogdoches, representing the city of Nacogdoches, knew before said attempted sale that the writ of injunction granted was being applied for, and said bank had been notified before the purchase of

said bonds not to purchase said bonds as they were invalid, said notice being both written and verbal, and petitioners are informed and believe that said bank is not, in truth and in fact, the purchaser of said bonds, but a mere go-between as to the city and some other parties; that, at the time of said sale, said George H. Matthews was the acting mayor of the city of Nacogdoches, and that he received no money at said sale of said bonds; that said bank did not have the money to pay for said bonds, the sum being $57,000 and the accrued interest thereon; plaintiffs allege that said bonds could only be sold for cash, and no cash was paid by the Guaranty State Bank for said bonds, and neither did the mayor nor the city of Nacogdoches receive any cash for said bonds, and plaintiffs allege and say that no sale of said bonds has ever been made as they are informed and believe, and plaintiffs allege the fact to be that all of said bonds were delivered to said Guaranty State Bank about 4 o'clock p. m. on July 31, 1912, and that it now has in its possession about two-thirds of said $57,000 worth of said bonds; that said bank had an arrangement with another concern substantially that, if said bank would procure said bonds, such other concern would take said bonds in three equal installments, and that said third concern had full notice and knowledge of all the above facts in fact, and also by virtue of the agency of said Guaranty State Bank." This answer also asks that Zeno H. Cox, tax collector of the city of Nacogdoches, and the Commercial Guaranty State Bank of Nacogdoches be made parties defendant.

It does not appear that any service was had upon either of these parties, and they made no appearance herein by answer or otherwise. On August 31st the motion of defendant to dissolve the restraining order was heard and granted by the judge in chambers, and thereafter, on September 2, 1912, the day named in the restraining order, the application for temporary injunction was heard by the court upon the pleading and affidavits presented by the parties, and said application was refused. From the order refusing the application, plaintiffs prosecute this appeal.

June C. Harris, Geo. F. Ingraham, and V. E. Middlebrook, all of Nacogdoches, for appellants. Blount & Strong and C. A. Hodges, all of Nacogdoches, for appellees.

PLEASANTS, C. J. (after stating the facts as above). [1] From the foregoing statement of the facts established upon the hearing in the court below, the bonds, the sale of which plaintiffs sought to have enjoined, were in fact sold and delivered before the application for temporary injunction was heard, and therefore no injunction against their sale could have been granted.

[2] Upon this state of facts, if the validity of the bonds can be inquired into at all in this proceeding, to which the purchaser is not a party, said bonds having been duly approved and certified by the Attorney General and registered in the comptroller's office in accordance with articles 619, 620, 621, and 622 of the Revised Statutes, the only ground upon which their validity can be attacked is forgery or fraud, or that their issuance was contrary to the Constitution of this state. Article 625 of the Revised Statutes reads as follows: "Such bonds, after receiving the certificate of the Attorney General, and having been registered in the comptroller's office, as provided herein, shall thereafter be held, in every action, suit or proceeding in which their validity is or may be brought into question, prima facie valid and binding obligations. And in every action brought to enforce collection of such bonds the certificate of the Attorney General, or a certified copy thereof, shall be admitted and received in evidence of the validity of such bonds, together with the coupons thereto attached: Provided, the only defense which can be offered against the validity of said bonds shall be for forgery or fraud. But this article shall not be construed to give validity to any such bonds as may be issued in excess of the limit fixed by the Constitution, or contrary to its provisions, but all such bonds shall, to the extent of such excess, be held void." We think the purpose and intent of this statute is to make valid, in the hands of a purchaser, all municipal bonds that have been approved, certified, and registered in accordance with the provisions of the statute, unless such bonds are forgeries or were fraudulently issued, or issued contrary to the Constitution. We think it clear that, if no defense other than forgery or unconstitutionality can be urged against a suit brought to enforce a collection of such bonds by the purchaser, a suit brought by the taxpayers to have such bonds declared invalid can only be maintained upon one of the grounds before named.

[3] It follows from this conclusion that the only ground of invalidity alleged by plaintiffs that it is necessary for us to consider is that, under the Constitution of this state, cities are not authorized to issue bonds for the purchase or construction of electric light plants. Plaintiffs contend that section 9, art. 8, of the Constitution, which authorizes the levy of taxes by cities for permanent improvements, does not authorize such levy for the purpose of acquiring an electric light plant. By the provisions of this section a tax is authorized "for the erection of public buildings, streets, sewers, waterworks, and other permanent improvements." It is urged that the erection and operation of an electric light plant is an enterprise so different from the erection of public buildings, streets, sewers, and waterworks that under the rule of ejusdem generis it cannot be regarded as included in the clause "other permanent im-

provements" used in said section of the Constitution. Prior to the amendment of the Constitution in 1890, when "waterworks" was added to the named improvements for which the tax might be levied, it was held that no tax could be levied by a city for the purpose of acquiring waterworks. Ellis v. City of Cleburne, 35 S. W. 499. Plaintiffs contend that, if a tax for the erection of waterworks was not authorized under the term "other permanent improvements," a fortiori an electric light plant cannot be held to be included in said term. We do not think this contention is sound. Waterworks and electric light plants are of the same general character of public utilities or improvements. Each is distinctly different from a public building or from streets or sewers; and, while waterworks might be held not ejusdem generis with public buildings, streets, and sewers, we think electric light plants bear that relation to waterworks.

[4] If we did not feel constrained to hold that none of the other objections to the bonds could invalidate them under the provisions of the statute before quoted, we would not be inclined to hold that the submission to the voters as one proposition the question of issuing bonds for the purpose of "purchasing and constructing an electric light plant for said city" was improper or in any way affected the validity of the election or of the bonds issued as a result thereof. The proposition to purchase might have been submitted separately from the proposition to construct an electric light plant, but we do not think the council was required to submit separate propositions for the purpose of ascertaining the choice of the voters as to the method of acquiring the light plant. Under the proposition submitted, the voter who cast his vote in favor of the bonds must have understood that by so voting he left it to the judgment of the council whether the bonds should be used for purchasing or constructing a light plant, or for both purposes. We think this manner of submitting the question was permissible.

[5] There is much force in the contention that the change in the redemption period from 5 years, as stated in the proposition submitted to the voters, to 10 years was such a material change as to render the bonds invalid. It is clear that an obligation payable in 40 years, and only redeemable after 10 years, is more onerous than one payable in 40 years and redeemable after 5 years. The difference in the amounts the debtor would be required to pay might be the interest upon the whole amount for 5 years, and would certainly be the interest for 5 years upon whatever amount he might be able to pay at the end of 5 years from the date of the bonds, less any interest that might be earned in that time by the fund out of which the payment would have been made. We do not think the contention that this change was immaterial

and should not be regarded, because it was not necessary to state in the proposition submitted to the voters when the bonds were redeemable, is sound. Article 606 of the Revised Statutes provides that "the proposition to be submitted for the issuance of bonds shall distinctly specify the purpose for which the bonds are to be issued, the amount thereof, the time in which they are payable, and the rate of interest." It is true that this article does not in so many words require that the proposition shall specify the period of redemption, but it is not clear that such requirement is not included in the general term "the time in which they are payable." While in a technical sense the date upon which an obligation becomes payable is the date upon which payment can be enforced, it seems to us that the term "the time in which an obligation is payable," as used in the statute, might be properly construed to include both the redemption and maturity dates of the obligation. At any rate, there is no inhibition in the statute against including the redemption date in the proposition; and having so submitted the proposition, and the voters having voted in favor of bonds redeemable in 5 years, we do not think it was proper to change the redemption period to 10 years. The bonds issued are not the bonds authorized by the voters, but materially different therefrom, and, as before said, clearly more onerous. In the case of Skinner v. Santa Rosa, 107 Cal. 472, 40 Pac. 745, 29 L. R. A. 512, the Supreme Court of that state, in discussing this question, say: "If the terms and conditions submitted to the electors may be departed from, and such election held to authorize the issuance of bonds under other terms and conditions, a door will be opened authorizing the common council to submit a proposition so favorable as to secure beyond question a favorable vote, then change the conditions as to rate or otherwise, even without any fraudulent purpose or intent, so that, if again submitted, an overwhelming defeat would result."

[6] But, as we have before said, this defect in the bonds is not one that can now be urged against their validity; they having been approved and certified by the Attorney General and registered in the office of the comptroller, and being now in the hands of a purchaser from the city.

[7] We are of opinion that the trial court did not err in refusing to grant the injunction prayed for by plaintiffs, except in so far as they sought to restrain the defendants "from using the funds or any part thereof derived from the sale of any part of said bonds for the payment of any debts contracted for bridges or other purposes before the issuance of said bonds or before the call for said election." We do not think the city authorities could legally use any of the funds derived from the sale of the bonds to pay any debts contracted by the city prior to the

election at which the bonds were voted. The bonds were not voted for the purpose of paying any existing debts of the city, and the funds derived from their sale cannot be used for·such purpose.

The judgment of the court below should be affirmed, except as to that portion refusing to enjoin the use of the funds for the purposes above stated, and that portion of the judgment should be reversed and judgment here rendered enjoining the defendants from using any of the funds derived from the sale of said bonds for the purposes stated, and it has been so ordered.

Affirmed in part. Reversed and rendered in part.