Honorable Jerry Cobb Criminal District Attorney Denton County 5th Floor Carroll Courts P.O. Box 2344 Denton, Texas 76202
Re: Whether a 9-1-1 emergency communication district may increase its fee without an election, and related questions (RQ-1651)
Dear Mr. Cobb:
You ask three questions relating to the Denton County Emergency Communication District [the "district"] which was established under article 1432e, V.T.C.S. [the "act"].
An emergency communication district under article 1432e is a body corporate and politic, having capacity to sue or be sued, which is created pursuant to a confirmation and fee election for the purpose of providing a primary three digit emergency telephone number through which emergency services can be quickly obtained. See V.T.C.S. art. 1432e, §§ 2, 11, 12.
Your first question is whether the district, under the circumstances which we will summarize below, may increase the emergency service fee it charges to six percent of the principal service supplier's base rate "without need of another election."
As amended in 1987, section 11(b) of the act provides in relevant part:
 The board may charge a 9-1-1 emergency service fee at a rate not to exceed six percent of the base rate of the principal service supplier per service year per month in the participating jurisdictions.
The fee is collected by the service supplier from service users as a stated portion of the users' service bill and remitted to the district. V.T.C.S. art. 1432e, § 14.
The act as originally adopted in 1985 provided in section 11(b) for charging the emergency service fee at a rate not to exceed three percent of the base rate. Acts 1985, 69th Leg., ch. 288, at 1331. The only change made in section 11(b) by the 1987 amendment was to substitute six percent for three percent.
The focus of your concern is the effect of the following language which appeared on the ballot at the confirmation and fee election held on August 8, 1987, to confirm the creation of the district and the collection of a fee:
 `Confirming the creation of an emergency communication district and authorizing a 9-1-1 emergency service fee not to exceed three percent of the base rate of the principal service supplier per service year per month to be charged by the District of Denton County excluding the portion in the City of Dallas.' (Emphasis added.)
Section 11(e) specifically provides for the following proposition language to appear on such ballot:
 `Confirming the creation of an emergency communication district and authorizing a 9-1-1 emergency service fee to be charged by the district.'
Thus, while section 11(e) does not provide that a statement of the maximum percentage fee to be charged is to be included in the ballot proposition, the language of the district's August 8, 1987, ballot in fact stated that the maximum fee would not exceed three percent of the base rate. Moreover, at the time of the election, section 11(b) of the act had been amended to provide that the maximum fee charged could not exceed six percent, rather than three percent as the ballot stated and as that section had provided prior to the amendment.
A further complication is that the language of section 11(b), from which the excess ballot language in question was evidently derived, apparently misstates the legislature's intent as to the calculation of the permissible fee. Again, that provision reads in pertinent part:
 The board may charge a 9-1-1 emergency service fee at a rate not to exceed six percent of the base rate of the principal service supplier per service year per month in the participating jurisdictions. (Emphasis added.)
Except for the change made by the 1987 amendment, substituting six percent for three percent, this language is as it appeared in the original 1985 act. Attorney General Opinion JM-681 (1987) concluded that the words "per service year" in section 11(b) of article 1432e should read "per service user" as does the language of the parallel provisions in section 10(b) of article 1432c and section 11(b) of article 1432d.[1]
As to the part of your question which asks whether another election is needed, we find no authority in article 1432e or elsewhere in current Texas law for holding another election. An election held without legal authority is a nullity. Smith v. Morton Indep. School Dist., 85 S.W.2d 853 (Tex.Civ.App.-Amarillo 1935, writ dism'd); Attorney General Opinion V-564 (1948). Section 11(h) does provide for the holding of another confirmation and fee election after one year from the date of a confirmation and fee election at which "the majority of votes cast in the election is against the creation of the district and the levy of the fee." Despite the variation in the ballot language from that prescribed by statute, the August 8, 1987, election could not be said to be one in which the majority of votes cast were against the creation and the fee levy. You state in your request that the proposition on the ballot at that election was approved by the voters. Moreover, section 5 of the act provides that a district may not be created under the act after January 1, 1988.
It would appear further that an action to declare the August 8, 1987, election void because of the variant ballot language — thus arguably permitting a court to direct the ordering of a new election in its place — would have been required to be brought as an election contest. However, the deadline for contesting the August 8, 1987, election, thirty days from the date the result was declared, has passed. Elec. Code §§ 221.003, 233.006, 233.011. Since another election is not authorized, your first question narrows to whether the board may raise the emergency service fee to six percent in view of the August 8, 1987, ballot language limiting the fee to three percent.
In Simpson v. Nacogdoches, 152 S.W. 858 (Tex.Civ.App.-Galveston 1912, writ dism'd), taxpayers sought to have certain municipal bonds declared invalid. The tax payers alleged that after the election approving issuance of the bonds, the city council passed an ordinance authorizing issuance of the bonds "but providing that the period of redemption of the bonds should be fixed at 10 years . . . instead of 5 years, as provided in the resolution submitted to the voters." Simpson, supra, at 859. After discussing inconclusively whether the redemption date was required to be included in the proposition submitted at the election, the court stated:
 [H]aving so submitted the proposition, and the voters having voted in favor of bonds redeemable in 5 years, we do not think it was proper to change the redemption period to 10 years. The bonds issued are not the bonds authorized by the voters, but materially different therefrom, and, as before said, clearly more onerous.
Id. at 862. However, the court concluded that "this defect in the bonds is not one that can now be urged against their validity," id., since the controlling statute provided that once certified by the attorney general and registered in the office of the comptroller such bonds could be attacked only on the grounds of fraud, forgery, or unconstitutionality.
In Attorney General Opinion WW-1009 (1961), though the ballot used provided for no time limitation, the order of election on a county tax proposition indicated that the vote would be to determine whether a tax would be levied for the following four years. The controlling statute did not provide for a time limitation on levying the tax. In response to the question whether taxes were authorized (as a result of the election) to be levied in years subsequent to those provided for in the election order, the opinion concluded in the negative.
Accordingly, we conclude that since an attempt by the district to raise the fee to six percent might possibly be successfully resisted in court, and since holding another election to approve charging the six percent fee is unauthorized, the district, if it wishes to impose a six percent fee, should seek remedial legislation.
Your second question is:
 Are Board members individually liable for actions taken on behalf of the Board?
We note first, in response to a specific question raised in the brief accompanying your request, that the provisions of section 4(b) of article 1432f clearly operate to insulate from liability, to some extent, the board members of an emergency communication district created under article 1432e. Section 4(b) provides in relevant part:
 A member of the advisory commission or the governing body of a public agency may not be held liable for any claim, damage, or loss arising from the provision of 9-1-1 service unless the act or omission causing the claim, damage or loss violates a statute or ordinance applicable to the action. (Emphasis added.)
Section 1 of article 1432f, in subsection (6), defines "public agency" to include emergency communication districts, including, pursuant to subsection (2) of section 1, districts created under article 1432e.
Also, the common law on immunity of public officials might provide immunity additional to that provided for in section 4(b) of article 1432f. At common law public officials, as a general rule, are not individually liable for acts performed within the scope of their public duties, particularly where such acts involve the exercise of discretion, as opposed to ministerial acts. Such immunity does not extend to acts beyond the scope of the officials' legal powers. See 47 Tex.Jur.2d Public Officers s 130, and authorities cited there.
On the other hand, whether the defense of common law immunity would be available in a particular case would depend ultimately on the facts of the case and involve a balancing of the interests the public has in protection from wrongful official acts and the interests in freeing public officials from legal attacks which could hamper, deter or intimidate them in the discharge of their official duties. See 63A Am.Jur.2d Public Officers and Employees §§ 358-365, and authorities cited there.
You have not specified in your request the particular acts of emergency communication district board members the immunity about which you are concerned. Thus, we decline to speculate as to what particular kinds of board member actions might fall outside the protection afforded by article 1432f, subsection 4(b), or common law immunity. See also Liability of Texas Public Officials for their Tortious Acts, 16 Hous.L.Rev. 100 (1978).
Your third question is:
 In the event a Board member is individually sued, may the Board vote to indemnify a member who is sued?
The only arguably applicable authority we find for "indemnification" of public officials for damages adjudged against them in connection with the performance of their official duties is in chapter 104 of the Civil Practice and Remedies Code. That chapter provides for indemnification by the state of an employee or officer, or former employee or officer, of a "state agency, institution, or department." Civ.Prac. Rem. Code s 104.001. We do not think that an article 1432e communication district is a "state agency, institution, or department" under chapter 104. See Attorney General Opinion JM-1005 (1989) (the Angelina Neches River Authority is not a state institution, agency or department within the meaning of chapter 104 of the Civil Practice and Remedies Code).
We note however that chapter 102 of the Civil Practice and Remedies Code makes provisions similar to those in chapter 104 but with respect to payment of damages awarded against local government officers and employees. Section 102.002 provides:
 (a) A local government may pay actual damages awarded against an employee of the local government if the damages:
 (1) result from an act or omission of the employee in the course and scope of his employment for the local government; and
(2) arise from a cause of action for negligence.
 (b) The local government may also pay the court costs and attorney's fees awarded against an employee for whom the local government may pay damages under this section.
 (c) A local government may not pay damages awarded against an employee that:
(1) arise from a cause of action for official misconduct; or
 (2) arise from a cause of action involving a willful or wrongful act or omission or an act or omission constituting gross negligence.
 (d) A local government may not pay damages awarded against an employee to the extent the damages are recoverable under an insurance contract or a self-insurance plan authorized by statute.
Civ.Prac. Rem. Code § 102.002.
We think that an emergency communication district created under article 1432e is a "local government" within the meaning of section 102.002. Section 102.001, subsection (2), defines "local government" as a "county, city, town, special purpose district, and any other political subdivision of the state."
Again, since you do not present a specific factual context, we will not speculate as to whether, and if so, which kinds of acts of a board member might be the basis for an award of actual damages such that the district would be authorized to pay them under chapter 102.
 SUMMARY
Because the ballot proposition at its confirmation and fee election included language reading "authorizing a 9-1-1 emergency service fee not to exceed three percent of the base rate of the principal service supplier," an attempt by the Denton County Emergency Communication District subsequently to raise the fee to six percent of the base rate might be subject to declaratory, injunctive or other relief in a court action. The holding of another election to approve raising the fee to six percent is not authorized.
The provision of section 4(b) of V.T.C.S. article 1432f that a "member of . . . the governing body of a public agency may not be held liable for any claim, damage, or loss arising from the provision of 9-1-1 service unless the act or omission causing the claim, damage, or loss violates a statute or ordinance applicable to the action" applies to board members of an emergency communication district created under V.T.C.S. article 1432e. Common law public official immunity might, on a given set of facts, provide additional insulation from liability for board members of the district.
Chapter 102 of the Civil Practice and Remedies Code authorizes an article 1432e emergency communication district board to pay actual damages awarded against a board member under the circumstances provided for in that chapter.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lou McCreary Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by William Walker Assistant Attorney General
[1] The latter articles provide for emergency communication districts in counties of over two million and 860,000 population respectively, while article 1432e applies to counties of over 20,000 population.