

# THE ATTORNEY GENERAL
## OF TEXAS

June 5, 1989

JIM MATTOX
ATTORNEY GENERAL

Honorable Jerry Cobb
Criminal District Attorney
Denton County
5th Floor Carroll Courts
P. O. Box 2344
Denton, Texas  76202

Opinion No.  JM-1053

Re:  Whether a 9-1-1 emergency communication district may increase its fee without an election, and related questions  (RQ-1651)

Dear Mr. Cobb:

You ask three questions relating to the Denton County Emergency Communication District [the "district"] which was established under article 1432e, V.T.C.S. [the "act"].

An emergency communication district under article 1432e is a body corporate and politic, having capacity to sue or be sued, which is created pursuant to a confirmation and fee election for the purpose of providing a primary three digit emergency telephone number through which emergency services can be quickly obtained. See V.T.C.S. art. 1432e, §§ 2, 11, 12.

Your first question is whether the district, under the circumstances which we will summarize below, may increase the emergency service fee it charges to six percent of the principal service supplier's base rate "without need of another election."

As amended in 1987, section 11(b) of the act provides in relevant part:

> The board may charge a 9-1-1 emergency service fee at a rate not to exceed six percent of the base rate of the principal service supplier per service year per month in the participating jurisdictions.

The fee is collected by the service supplier from service users as a stated portion of the users' service bill and remitted to the district. V.T.C.S. art. 1432e, § 14.

The act as originally adopted in 1985 provided in section 11(b) for charging the emergency service fee at a rate not to exceed three percent of the base rate. Acts 1985, 69th Leg., ch. 288, at 1331. The only change made in section 11(b) by the 1987 amendment was to substitute six percent for three percent.

The focus of your concern is the effect of the following language which appeared on the ballot at the confirmation and fee election held on August 8, 1987, to confirm the creation of the district and the collection of a fee:

> 'Confirming the creation of an emergency communication district and authorizing a 9-1-1 emergency service fee <u>not to exceed three percent of the base rate of the principal service supplier per service year per month</u> to be charged by the District of Denton County excluding the portion in the City of Dallas.' (Emphasis added.)

Section 11(e) specifically provides for the following proposition language to appear on such ballot:

> 'Confirming the creation of an emergency communication district and authorizing a 9-1-1 emergency service fee to be charged by the district.'

Thus, while section 11(e) does not provide that a statement of the maximum percentage fee to be charged is to be included in the ballot proposition, the language of the district's August 8, 1987, ballot in fact stated that the maximum fee would not exceed three percent of the base rate. Moreover, at the time of the election, section 11(b) of the act had been amended to provide that the maximum fee charged could not exceed six percent, rather than three percent as the ballot stated and as that section had provided prior to the amendment.

A further complication is that the language of section 11(b), from which the excess ballot language in question was evidently derived, apparently misstates the legislature's intent as to the calculation of the permissible fee. Again, that provision reads in pertinent part:

> The board may charge a 9-1-1 emergency service fee at a rate not to exceed six percent of the base rate of the principal

> service supplier <u>per service year</u> per month
> in the participating jurisdictions. (Empha-
> sis added.)

Except for the change made by the 1987 amendment, substitut-
ing six percent for three percent, this language is as it
appeared in the original 1985 act. Attorney General Opinion
JM-681 (1987) concluded that the words "per service year" in
section 11(b) of article 1432e should read "per service
user" as does the language of the parallel provisions in
section 10(b) of article 1432c and section 11(b) of article
1432d.[1]

As to the part of your question which asks whether
another election is needed, we find no authority in article
1432e or elsewhere in current Texas law for holding another
election. An election held without legal authority is a
nullity. <u>Smith v. Morton Indep. School Dist.</u>, 85 S.W.2d 853
(Tex. Civ. App. - Amarillo 1935, writ dism'd); Attorney
General Opinion V-564 (1948). Section 11(h) does provide
for the holding of another confirmation and fee election
after one year from the date of a confirmation and fee
election at which "the majority of votes cast in the
election is against the creation of the district and the
levy of the fee." Despite the variation in the ballot
language from that prescribed by statute, the August 8,
1987, election could not be said to be one in which the
majority of votes cast were against the creation and the fee
levy. You state in your request that the proposition on the
ballot at that election was approved by the voters.
Moreover, section 5 of the act provides that a district may
not be created under the act after January 1, 1988.

It would appear further that an action to declare the
August 8, 1987, election void because of the variant ballot
language -- thus arguably permitting a court to direct the
ordering of a new election in its place -- would have been
required to be brought as an election contest. However, the
deadline for contesting the August 8, 1987, election, thirty
days from the date the result was declared, has passed.
Elec. Code §§ 221.003, 233.006, 233.011. Since another

---

1. The latter articles provide for emergency
communication districts in counties of over two million and
860,000 population respectively, while article 1432e applies
to counties of over 20,000 population.

election is not authorized,  your first question narrows  to whether the board may raise the emergency service fee to six percent in  view  of  the  August  8, 1987,  ballot  language limiting the fee to three percent.

In Simpson  v.  Nacogdoches,  152  S.W.  858  (Tex.  Civ. App. - Galveston  1912, writ  dism'd), taxpayers  sought  to have certain  municipal  bonds declared  invalid.   The  tax payers alleged that after the election approving issuance of the bonds, the city council passed an ordinance  authorizing issuance of  the bonds  "but providing  that the  period  of redemption of the  bonds should be  fixed at 10  years . . . instead of 5 years, as provided in the resolution  submitted to the voters."   Simpson, supra, at 859.  After  discussing inconclusively whether the redemption  date was required  to be included in  the proposition submitted  at the  election, the court stated:

> [H]aving so  submitted the  proposition,  and
> the voters  having voted  in favor  of  bonds
> redeemable in 5 years, we do not think it was
> proper to change the redemption period to  10
> years.  The bonds  issued are  not the  bonds
> authorized  by  the  voters,  but  materially
> different therefrom,  and,  as  before  said,
> clearly more onerous.

Id. at 862.  However, the court concluded that "this  defect in the bonds is not one that can now be urged against  their validity," id., since the controlling statute provided  that once certified by the attorney general and registered in the office of the comptroller such bonds could be attacked  only on the grounds of fraud, forgery, or unconstitutionality.

In Attorney General Opinion WW-1009 (1961), though  the ballot used provided  for no time  limitation, the order  of election on a county tax proposition indicated that the vote would be to determine whether a tax would be levied for  the following four  years.   The  controlling  statute  did  not provide for  a  time  limitation on  levying  the  tax.   In response to the question whether taxes were authorized (as a result of the election) to be levied in years subsequent  to those provided  for  in  the  election  order,  the  opinion concluded in the negative.

Accordingly, we conclude that  since an attempt by  the district to raise the fee  to six percent might possibly  be successfully resisted in  court, and  since holding  another election  to  approve  charging  the  six  percent  fee  is

unauthorized, the district, if it wishes to impose a six percent fee, should seek remedial legislation.

Your second question is:

Are Board members individually liable for actions taken on behalf of the Board?

We note first, in response to a specific question raised in the brief accompanying your request, that the provisions of section 4(b) of article 1432f clearly operate to insulate from liability, to some extent, the board members of an emergency communication district created under article 1432e. Section 4(b) provides in relevant part:

A <u>member of</u> the advisory commission or <u>the governing body of a public agency</u> may not be held liable for any claim, damage, or loss arising from the provision of 9-1-1 service unless the act or omission causing the claim, damage or loss violates a statute or ordinance applicable to the action. (Emphasis added.)

Section 1 of article 1432f, in subsection (6), defines "public agency" to include emergency communication districts, including, pursuant to subsection (2) of section 1, districts created under article 1432e.

Also, the common law on immunity of public officials might provide immunity additional to that provided for in section 4(b) of article 1432f. At common law public officials, as a general rule, are not individually liable for acts performed within the scope of their public duties, particularly where such acts involve the exercise of discretion, as opposed to ministerial acts. Such immunity does not extend to acts beyond the scope of the officials' legal powers. <u>See</u> 47 Tex. Jur.2d <u>Public Officers</u> § 130, and authorities cited there.

On the other hand, whether the defense of common law immunity would be available in a particular case would depend ultimately on the facts of the case and involve a balancing of the interests the public has in protection from wrongful official acts and the interests in freeing public officials from legal attacks which could hamper, deter or intimidate them in the discharge of their official duties. <u>See</u> 63A Am. Jur.2d <u>Public Officers and Employees</u> §§ 358-365, and authorities cited there.

You have not specified in your request the particular acts of emergency communication district board members the immunity about which you are concerned. Thus, we decline to speculate as to what particular kinds of board member actions might fall outside the protection afforded by article 1432f, subsection 4(b), or common law immunity. See also Liability of Texas Public Officials for their Tortious Acts, 16 Hous. L. Rev. 100 (1978).

Your third question is:

> In the event a Board member is individually sued, may the Board vote to indemnify a member who is sued?

The only arguably applicable authority we find for "indemnification" of public officials for damages adjudged against them in connection with the performance of their official duties is in chapter 104 of the Civil Practice and Remedies Code. That chapter provides for indemnification by the state of an employee or officer, or former employee or officer, of a "state agency, institution, or department." Civ. Prac. & Rem. Code § 104.001. We do not think that an article 1432e communication district is a "state agency, institution, or department" under chapter 104. See Attorney General Opinion JM-1005 (1989) (the Angelina Neches River Authority is not a state institution, agency or department within the meaning of chapter 104 of the Civil Practice and Remedies Code).

We note however that chapter 102 of the Civil Practice and Remedies Code makes provisions similar to those in chapter 104 but with respect to payment of damages awarded against local government officers and employees. Section 102.002 provides:

> (a) A local government may pay actual damages awarded against an employee of the local government if the damages:
>
> (1) result from an act or omission of the employee in the course and scope of his employment for the local government; and
>
> (2) arise from a cause of action for negligence.

(b)  The local government may also pay the court costs and attorney's fees awarded against an employee for whom the local government may pay damages under this section.

(c)  A local government may not pay damages awarded against an employee that:

(1)  arise from a cause of action for official misconduct; or

(2)  arise from a cause of action involving a willful or wrongful act or omission or an act or omission constituting gross negligence.

(d)  A local government may not pay damages awarded against an employee to the extent the damages are recoverable under an insurance contract or a self-insurance plan authorized by statute.

Civ. Prac. & Rem. Code § 102.002.

We think that an emergency communication district created under article 1432e is a "local government" within the meaning of section 102.002.  Section 102.001, subsection (2), defines "local government" as a "county, city, town, special purpose district, and any other political subdivision of the state."

Again, since you do not present a specific factual context, we will not speculate as to whether, and if so, which kinds of acts of a board member might be the basis for an award of actual damages such that the district would be authorized to pay them under chapter 102.

## S U M M A R Y

Because the ballot proposition at its confirmation and fee election included language reading "authorizing a 9-1-1 emergency service fee not to exceed three percent of the base rate of the principal service supplier," an attempt by the Denton County Emergency Communication District subsequently to raise the fee to six percent of the base rate might be subject to

declaratory, injunctive or other relief in a court action. The holding of another election to approve raising the fee to six percent is not authorized.

The provision of section 4(b) of V.T.C.S. article 1432f that a "member of . . . the governing body of a public agency may not be held liable for any claim, damage, or loss arising from the provision of 9-1-1 service unless the act or omission causing the claim, damage, or loss violates a statute or ordinance applicable to the action" applies to board members of an emergency communication district created under V.T.C.S. article 1432e. Common law public official immunity might, on a given set of facts, provide additional insulation from liability for board members of the district.

Chapter 102 of the Civil Practice and Remedies Code authorizes an article 1432e emergency communication district board to pay actual damages awarded against a board member under the circumstances provided for in that chapter.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General